UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Karen Vernia,<br> Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner<br>of Social Security,<br> Defendant. | )<br>)<br>)<br>) No. 16 C 50364<br>) Hon. Iain D. Johnston<br>) Judge Presiding<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

The Claimant brings this action under 42 U.S.C. §405(g), seeking remand of the decision by Respondent, Nancy A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner"), denying the Claimant's application for disability insurance benefits under Title II of the Social Security Act ("SSA") and denying the Claimant's application for supplemental security income (SSI) under Title XVI of the SSA. This matter is before the Court on cross-motions for summary judgment. (Dkt. #12, 17).

The Claimant argues that the Commissioner's decision denying her applications for benefits should be remanded for further proceedings because the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence. The Commissioner argues that the ALJ's decision should be affirmed because it is supported by substantial evidence. For the reasons set forth more fully

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is therefore substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

below, the Claimant's motion for summary judgment is granted, and the Commissioner's motion is denied. The matter is remanded to the Commissioner.

## I. BACKGROUND

The Claimant's last date of insured is September 30, 2009. R. 20. In March 2011, the Claimant filed applications for disability alleging a disability onset date of December 31, 2005, due to neck, back, hip, foot, and shoulder issues, as well as headaches, depression, and emphysema. R. 20. The claims were denied on June 28, 2011, and again denied upon reconsideration on November 14, 2011. R. 20. Several state agency consultants evaluated the Claimant's impairments during this period. A psychological evaluation was performed by Dr. John Peggau, Ph.D. R. 28. Dr. Donna Hudspeth, Psy.D. also completed a psychiatric review of the Claimant. R. 29. Dr. Marion Panepinto and Dr. Towfig Arjmand each completed a residual functional capacity ("RFC") assessment for the Claimant regarding the Claimant's physical impairments. R. 29. On February 27, 2013, a hearing took place before an Administrative Law Judge ("ALJ"). R. 20. At the hearing Craig Johnson testified as a vocational expert. R. 20. The record also included two RFC forms completed by Dr. Michael Maloney, the Claimant's long-time treating physician. R. 30-31. On March 8, 2013, the applications were denied. R. 35. The Claimant's request for review by the Appeals Council was denied and she subsequently filed a complaint in federal court.

On June 5, 2014, while this matter was still pending in federal court, the Claimant filed an application for Title XVI benefits. R. 1502. The state agency obtained two medical opinions for the June 2014 application. An opinion was submitted by Erika Gilyot-Montgomery, Psy.D. regarding the Claimant's mental impairments. R. 1502. An opinion was also submitted by Richard Bilinsky, M.D. regarding the Claimant's physical impairments. R. 1502. On August 25, 2014, the application was granted, finding the Claimant disabled as of March 9, 2013. R. 1502.

On April 1, 2015, this court granted the parties' agreed motion to remand and remanded the case concerning the original two applications. R. 1498. The Appeals Council then reviewed prior proceedings to determine if further proceeding were warranted before the ALJ. On September 11, 2015, the Appeals Council affirmed the finding that the Claimant was disabled, but found that since the 2014 state agency determination related only to a Title XVI application, the earliest onset date would be the date of application, which was June 5, 2014. R. 1502. The Appeals Council remanded the case to the ALJ to gather further evidence and conduct a hearing to determine whether the Claimant was disabled before June 5, 2014. R. 1504.

On January 28, 2016, a second hearing was conducted for the March 2011 applications. R. 1355. At the hearing Dr. Allen W. Heinemann, Ph.D. testified as a non-examining medical expert and Jill Radke testified as a vocational expert. R. 1355. On February 17, 2016, the ALJ issued a partially favorable decision, finding

3

the Claimant had the RFC to perform light work, and that the Claimant was disabled as of March 24, 2014. R. 1362, 1379. The Claimant then filed this appeal pursuant to 42 U.S.C. §405(g). The Claimant requests a finding that she was disabled as of December 31, 2005. In the alternative, the Claimant requests a finding that she was disabled as of March 9, 2013. As another alternative request, the Claimant seeks to have the ALJ's decision vacated and have this matter remanded to the ALJ for further proceedings.

The medical record includes treatment records for the Claimant's various physical and mental conditions. The records that are particularly pertinent for this appeal include the opinions of the various state agency consultants concerning the Claimant's physical conditions, as well as the medical record records from Dr. Maloney, who became the Claimant's primary physician in 2004 and treated the Claimant for the variety of physical ailments that she asserts in her applications. R. 273. Dr. Maloney submitted a RFC assessment on July 17, 2012, and a second assessment on November 19, 2012. R. 30-31. The medical record also includes treatment records from Dr. Brian Bear, who performed surgery on the Claimant's right shoulder rotator cuff in 2009 and made certain findings concerning the Claimant's ability to lift. R. 26, 272, 1366.

## II. DISCUSSION

The Claimant argues (1) that the ALJ failed to properly apply the treating physician rule, (2) that the ALJ erred by substituting her own opinions for the

4

opinions of medical experts, (3) that the ALJ failed to properly consider the statements of the Claimant's boyfriend and father when determining the Claimant's onset date of disability, and (4) that the Claimant exhausted administrative remedies after the Appeals Council's remand. It is important to note initially that the Claimant has not challenged the ALJ's finding regarding the Claimant's mental RFC and that on appeal the Claimant is only challenging the finding regarding the Claimant's physical RFC. The Claimant does not argue that any of the expert opinions concerning her mental health were improperly considered and instead argues that such expert opinions offered the ALJ no guidance in the determination of the Claimant's physical RFC.[2]

A. Treating Physician Rule

The Claimant contends that the ALJ failed to properly apply the treating physician's rule when assessing the opinions of Dr. Maloney. Under the treating physician rule, a treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ cannot simply disregard it without further analysis. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). Instead, the ALJ must determine what specific weight, if any, the opinion should be given. *Moss v. Astrue,* 555 F.3d 556, 561 (7th

---

[2] The Claimant argues that the ALJ placed the greatest weight on Dr. Heinemann's opinions, but that Dr. Heinemann was only qualified to give an opinion regarding the Claimant's psychological impairments. (P. SJ at 9).

Cir. 2009). To make this determination, the ALJ must apply the checklist of six factors set forth in 20 C.F.R. § 404.1527(c)(2). *Campbell*, 627 F.3d at 308 (referring to the factors as a "required checklist"). Failure to apply the checklist is reversible error. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (ALJ disregarded checklist).

Regarding the Claimant's physical impairments, the Commissioner did not have any medical examination of the Claimant performed by a state agency physician before either hearing. Nor did any medical expert testify at the January 28, 2016 hearing regarding the Claimant's physical conditions. The records from Dr. Maloney, including his two RFC assessments, address the treatment of the wide array of the Claimant's physical impairments over an extended period of time and provided the most comprehensive look at the Claimant's physical condition. Yet the ALJ decided to give little or limited weight to Dr. Maloney's opinions and gavesubstantial weight to the opinions of certain non-examining and non-treating medical experts. R. 1375. To the extent that the ALJ gave great weight to the opinions of consultants relating to the Claimant's mental condition, such as Dr. Heinemann, such experts were not qualified to give opinions concerning the Claimant's physical impairments.

In discounting the opinions of Dr. Maloney, the ALJ noted that Dr. Maloney was not a specialist. R. 1374. The ALJ also found that Dr. Maloney's opinions were not entitled to great weight because the ALJ believed them to be based mainly on the Claimant's subjective complaints instead of objective findings. R. 1374-75. The

6

ALJ also noted that Dr. Maloney had submitted two RFC assessments and that the most recent form listed less restrictive impairments than the prior assessment. R. 1373-75. The ALJ concluded that because the RCF assessments were inconsistent they were entitled to lesser weight. R. 1374.

The Claimant acknowledges that Dr. Maloney's second RFC assessment was less restrictive than the first RFC assessment, but the Claimant argues that even based on the second RFC assessment, the Claimant should have been deemed to have an RFC at the sedentary capacity level. Dr. Maloney indicated that the Claimant's maximum ability to lift and carry on an occasional or frequent basis was 10 lbs. R. 1148. Dr. Maloney also indicated that the Claimant was only able to stand or walk for 3 hours during an 8-hour day. R. 1148. Such restrictions would suggest a sedentary capacity and, to the extent that the ALJ believed otherwise or found that it conflicted with other objective medical evidence, it was incumbent on the ALJ to explain such conclusions. The ALJ indicated that Dr. Maloney's opinions "seem" to mainly rely on the Claimant's subjective complaints. R. 1375. Such as statement alone indicates an uncertainty on the ALJ's part that should have been investigated further. The ALJ also cast doubt on the Claimant's subjective complaints and asserted that Dr. Maloney's opinions were not supported by objective findings, but the ALJ provided only a cursory analysis and failed to adequately explain such a conclusion. R. 1373-75.

Dr. Bear was a treating physician who indicated at some point that the Claimant could lift 20 pounds without restrictions. R. 1366. To the extent that the

7

ALJ relied upon Dr. Bear's opinion (and it is unclear if the she did), the ALJ failed to acknowledge Dr. Bear's limited role in the Claimant's overall treatment. Dr. Bear solely treated the Claimant on a limited number of occasions during 2009 for her shoulder injury. The Claimant does not dispute Dr. Bear's assessment concerning the functional ability of the Claimant's shoulder. (P. SJ at 8). Dr. Bear, however, did not treat the Claimant for her various other physical impairments and offered no opinion concerning the cumulative effect of those other impairments upon the Claimant's ability to perform certain physical tasks. On remand, the ALJ must properly consider the treating physician rule and give adequate consideration to both the opinions of treating and non-treating sources.

### B. ALJ's Substitution of Own Opinions for Opinions of Medical Experts

The Claimant argues that the ALJ improperly substituted her own opinions for the opinions of the medical experts in this case. The Seventh Circuit has cautioned ALJs that they "must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016) (stating that "[t]here is always a danger when lawyers and judges attempt to interpret medical reports"); *see also Lambert v. Berryhill*, 2018 WL 3470994, at *4 (7th Cir. July 19, 2018) (stating that "ALJs must rely on expert opinions instead of determining the significance of particular findings themselves").

8

The ALJ gave limited weight to Dr. Maloney's opinions in part simply because there were inconsistencies between the two RFC assessments submitted by Dr. Maloney. R. 1374. The ALJ indicated that the inconsistencies themselves cast the assessments into doubt because they were "only months apart." R. 1374. The Commissioner argues that the ALJ properly found that the "conflict between the opinions was, in and of itself, a reason to give little weight to the opinions." (C. SJ at 5-6). As the ALJ herself noted, the RFC assessments from Dr. Maloney were completed on July 17, 2012, and November 19, 2012, which was more than four months apart. R. 30-31, 1373.[3] The ALJ did not point to any medical expert opinion that would indicate that the Claimant's condition could not have improved in that four month period as indicated in the RFC assessments presented by Dr. Maloney. The ALJ thus failed to support her contention that the inconsistencies cast doubt on the RFC assessments made by Dr. Maloney. *Lambert*, 2018 WL 3470994, at *4 (stating that "[p]hysicians may update their views without being inconsistent if their later opinions are based on a patient's changed condition"). The ALJ thus improperly engaged in her own medical assessment when she found that what she believed were "significant discrepancies" rendered Dr. Maloney's opinions less credible. R. 1373; *Lambert*, 2018 WL 3470994, at *4.

The ALJ's logic was also flawed in regard to her decision to adopt the opinions of Dr. Panepinto and Dr. Arjmand and reject the opinions of Dr. Bilinsky. All three were non-treating state agency consultants that addressed the Claimant's physical condition. The ALJ gave lesser weight to the state agency consultants in

---

[3] The ALJ incorrectly stated in her earlier decision that the two RFC assessments were three months apart. R. 31.

9

the subsequent Title XVI proceedings such as Dr. Bilinsky "because the disability determination did not consider all of the medical evidence in the record." R. 1375-76. Yet, neither Panepinto nor Arjmand had at their disposal medical records after 2011 when they made their assessments. R. 92, 118. Indeed, Dr. Bilinsky's assessment was made later in August 2014, based on a more complete record. R. 1487. Although the Commissioner is correct that on remand from the Appeals Council the ALJ was not bound by the Dr. Bilinsky's opinion or his onset date finding in the prior agency proceedings, the Claimant is also correct that such findings are part of the comprehensive record that should have been given due consideration by the ALJ. The ALJ could not simply discount the opinion from an expert consultant such as Dr. Bilinsky without giving a more elaborate explanation for her reasoning.[4]

There were glaring examples regarding Dr. Bilinsky's findings that required further examination by the ALJ. For example, Dr. Bilinsky found that the Claimant was only capable of standing/walking for 4 hours out of an 8 hour workday. R. 1486.[5] Yet the ALJ chose to give greater weight to the opinions of Dr. Panepinto and Arjmand that indicated that the Claimant was capable of standing/walking for 6 hours out of an 8 hour workday. R. 91, 118. The ALJ did not assess Dr. Bilinsky's opinion and only referenced his opinion in the most general

---

[4] The court notes that in the remand decision by the Appeals Council, the Appeals Council questioned whether Dr. Bilinsky's findings supported a capacity for light work instead of sedentary work. R. 1502. The Appeals Council, however, made no specific finding concerning Dr. Bilinsky's assessment. Dr. Bilinsky concluded that the Claimant was only able to walk/stand for 4 hours of an 8 hour workday, which would suggest a sedentary capacity.
To the extent that the ALJ desired to examine whether Dr. Bilinsky believed that the Claimant was capable of light work, the ALJ should have developed the record further on that point.
[5] Dr. Bilinsky also concluded that the Claimant's onset date was March 9, 2013. R. 1491.

10

terms. The Commissioner argues that the RFC determination itself is not a medical determination and that it is the ALJ's job to resolve conflicts in the record. (C. SJ at 9-10). The ALJ, however, failed to adequately explain her decision regarding such disputes between the medical experts. Absent any such explanation, this court can only conclude that the ALJ ultimately made the call on such matters based on her own medical judgment. On remand, the ALJ must refrain from engaging in medical determinations without the support of medical experts and to the extent that the ALJ must choose between conflicting opinions, the ALJ must adequately support her decision rather than relying on her own personal medical assessment.

### C. Consideration of Statements by Boyfriend and Father

The Claimant argues that the ALJ failed to properly consider the statements of the Claimant's boyfriend, Guy Salvato, and the statements of the Claimant's father, George Vernia. The Claimant contends that the statements showed that the Claimant was disabled before 2013 and that the ALJ ignored such statements. The ALJ correctly pointed out that Guy Salvato made statements that were inconsistent with earlier statements made in the case and with statements made by the Claimant. R. 1361-62, 1376. The ALJ was entitled to take such matters into consideration. In regard to the statements by the Claimant's father, the Claimant indicates that the ALJ have considered the Claimant's father's statements relating to her mental condition. The Claimant, however, has not placed findings concerning her mental condition at issue in this appeal. (P. SJ at 14). Nor has the Claimant

11

shown that the statements from her father regarding her distant past would have been sufficient to warrant extending the onset date. Therefore, the Claimant has not shown that the ALJ failed to properly consider the statements made by the Claimant's boyfriend and father.

D. Exhaustion of Administrative Remedies

The Commissioner argues that the Appeals Council modified the ALJ's 2014 decision and that the Claimant has not exhausted her administrative remedies. According to the Commissioner, in the September 11, 2015, decision remanding this case, the Appeals Council modified the prior Title XVI award. The Commissioner contends that the Appeals Council found that the state agency had erred in finding that the Claimant was limited to sedentary work. Although the Commissioner fails to specify the basis for such a conclusion, it appears that the Commissioner is relying upon the reference in the decision to the opinion of Dr. Bilinsky. The Appeals Council "*note[d]* that Dr. Bilinsky's opinion appears to support a funding that the claimant is limited to a 'light' residual functional capacity and not a 'sedentary' residual functional capacity, as determined by the State agency." R. 1502 (emphasis added). The Appeals Council, however, made no specific finding that the Claimant had a light work capacity. The Appeals Council indicated that such an inquiry was unnecessary due to the facts and procedural history in the case at that juncture. R. 1502. The Commissioner also contends that the Appeals Council found that state agency finding as to the onset date of March 9, 2013, was

12

wrong. The Appeals Council merely held that the onset date for the Title XVI claim before it was limited to the date of application, which was June 5, 2014. R. 1502.

The Commissioner argues that the Claimant was required to exhaust her administrative remedies by filing an appeal concerning the Appeals Council's decision. There was no reason, however, to file such an appeal. The Appeals Council had already affirmed a finding of disability with an onset date of June 5, 2014. The remand by the Appeals Council specifically ordered the ALJ to conduct a new inquiry as to a possible earlier onset date for the applications that were remanded from the district court. Thus, the Claimant was given an opportunity to be heard in regard to relief that she sought. It would have been premature for the Claimant to seek an appeal after the Appeals Council remand and would have been an inefficient use of judicial resources. The Commissioner has thus failed to show that the Claimant failed to exhaust necessary administrative remedies.

Based on the above, the ALJ erred in part and the Claimant has shown that the ALJ's overall decision was not supported by substantial evidence. Therefore, the Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. The matter is remanded to the Commissioner.

## IV. CONCLUSION

For the reasons stated above, the Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. The matter is remanded to the Commissioner.

It is so ordered.

Entered: July 23, 2018

**Iain D. Johnston**
**U.S. Magistrate Judge**